IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  vs.  CHARLIE REA,  Defendant. | 4:20CR3064  FINDINGS, RECOMMENDATION, AND ORDER |

Defendant Rea has moved to suppress all evidence and statements obtained during the January 27, 2020 traffic stop of Rea's vehicle on Interstate 80 near Gibbon, Nebraska. Defendant claims there was no probable cause to stop his vehicle, his detention during that stop was unduly prolonged and unlawful, the vehicle was searched without a warrant, probable cause, or Defendant's consent, and the dog sniff of the vehicle was conducted by an unreliable canine. (Filing No. 28).

For the reasons discussed below, the motion to suppress should be denied.

### FACTUAL FINDINGS

The factual findings related to the traffic stop itself are based predominantly on the video recordings received into evidence.[1] The officer who initiated the traffic stop, Nebraska State Patrol Trooper Nathan Avery, testified at the hearing. His testimony was both wholly consistent with those recordings and

---

[1] See Exhibit 101, 01E4103320200127043310001i100.avi ("i100 video"), and 01E4103320200127043310001i200.avi ("i200 video").

credible. In addition, Trooper Justin Davis, who was the canine handler for "Mac" at the time of this stop, provided detailed and credible testimony regarding Mac's training, experience, and certification as a drug dog. As relevant to the issues of raised in the motion to suppress, the undersigned magistrate judge finds as follows.

While patrolling Interstate 80 on January 27, 2020, Nebraska State Patrol Trooper Nathan Avery was notified that a silver minivan transporting illegal drugs may be travelling on Interstate 80. At approximately 4:30 a.m., Trooper Avery saw an eastbound vehicle near Gibbon, Nebraska, which matched that description. He began following it, manually initiating his in-car camera to capture the vehicle's movements.

The officer saw the minivan enter the left lane to pass a semitruck. After passing the semitruck, the vehicle returned to the right lane at a one-second travelling distance in front of the truck. According to the Nebraska driver's handbook, for the road conditions at issue, a three-second distance is appropriate. The minivan then drove on and crossed over the right fog line. In Trooper Avery's experience, such vehicle movements during early morning hours indicate the driver could be tired or under the influence of drugs or alcohol.

Trooper Avery initiated a traffic stop for crossing the fog lines and for an improper lane change. After approaching the vehicle, the officer identified Defendant Charlie Rea as the driver. His wife was in the passenger seat and his four-year-old daughter was unrestrained and located in the second row of minivan. Defendant provided his driver's license, but he could not provide a current vehicle registration and insurance card. Defendant's wife also provided a form of identification. At the officer's request, Defendant exited the minivan and sat in the front seat of the officer's patrol vehicle.

2

While completing the necessary paperwork, including awaiting information regarding Defendant's driver's license and criminal history, Trooper Avery asked questions about Defendant's travel itinerary. In response, Defendant explained that he was returning from Omaha after attending a cousin's wedding. However, the vehicle was east bound and the stop occurred near Gibbon, Nebraska which is west of Omaha. So, Defendant was travelling toward Omaha, not away from it. When asked about the wedding, Defendant stated it was held on a Saturday (the stop occurred on a Monday), but he could not state where it was held or who attended. He then explained that the wedding was for his wife's cousin, not his. He acknowledged he was tired and looking for a gas station. But the officer had watched Defendant's vehicle as it travelled past exits with gas stations. Defendant explained the vehicle registration and insurance papers were not in the vehicle because it had recently been detailed. The officer noted the vehicle was not clean inside. Defendant stated he has four children. The officer had seen only one child in the vehicle. Defendant explained that two of the children flew home with their grandmother and one child did not attend the wedding.

Dispatch ultimately reported that Defendant's driver's license was valid, and he had a criminal history which included drug-related crimes.

Trooper Avery exited the patrol vehicle to return the wife's identification and ask her questions about the trip. She stated that they were returning from a family celebration/wedding in Nebraska. Like Defendant, she provided no specific information regarding the location of the wedding. Trooper Avery advised that the child must be in child restraints during travel. After she acknowledged this instruction, Trooper Avery returned to his patrol vehicle.

He issued a warning to Defendant for improper lane change, driving on the shoulder, and failing to have his child in proper restraints. As he handed the warning to Defendant, the trooper shook Defendant's hand and noticed it was clammy, an indicator of sustained nervousness.

The defendant began exiting the patrol vehicle, stating he was going to find a gas station and get a hotel. But as he exited, Defendant realized his shoes were on the wrong feet and he stopped to correct them. While Defendant was still seated in the patrol vehicle, Trooper Avery asked why there were no other car seats in the vehicle if other children had been in it before. He then asked if there was anything illegal in the vehicle. Defendant stated, "You can check," further adding that he had smoked marijuana earlier in the day, and there was some marijuana in the vehicle. Defendant then went to the minivan and retrieved the marijuana.

Deputy Sheriff Hogeland arrived at the scene to assist. The wife and child moved from the minivan to be seated in the patrol vehicle while Trooper Avery searched the minivan.

Within the van, the officers found a marijuana pipe and THC edibles and a Nevada receipt with a date that was inconsistent with attending a wedding in Omaha (or Nebraska) on January 25, 2021. The search confirmed Trooper Avery's belief that the vehicle was dirty and had not been recently detailed. While looking under the vehicle, the trooper noticed after-market modifications to the exhaust components and a crumpled heat shield. He suspected a concealed compartment had been added to the vehicle.

Trooper Avery requested a tow truck to move the vehicle to Grand Island so it could be placed on a lift and examined. When the tow truck arrived, it towed

the minivan to a Nebraska Department of Roads (NDOR) vehicle maintenance facility in Grand Island. Defendant and his family were detained and transported there in Trooper Avery's vehicle.

After the minivan arrived at the NDOR facility, a canine, Mac, was deployed by his handler, Trooper Justin Davis, to sniff the vehicle. Mac is trained, experienced, and certified to sniff for the odor of illegal drugs, including cocaine (but not fentanyl). During the canine sniff, Mac alerted to the scent of illegal drugs, and he indicated to an odor emanating from the driver's side sliding door and the passenger side engine compartment. When deployed into the van from the passenger side sliding door, Mac indicated at the area of the passenger front seat. The minivan was elevated on a lift. Looking beneath it, law enforcement located an after-market compartment directly below the passenger seat. Five packages of cocaine and fentanyl were found in the compartment.

Defendant was arrested.

Defendant was born in the United States but raised in Mexico. Spanish is his primary language. However, as evidenced by the video recordings, the conversation between the defendant and Trooper Avery during the traffic stop was professional, cordial, and in English. Defendant was able to speak fluent English and while some of his answers were evasive, he was never hesitant to respond nor did he appear confused when responding to Trooper Avery's questions. He provided appropriate responses to the officer's questions and asked follow-up questions in English. Defendant was not handcuffed prior to his arrest.

ANALYSIS

Defendant's motion to suppress raises Fourth Amendment challenges to the traffic stop, his detention, the vehicle search, and the canine sniff. He argues the evidence obtained as a result of the traffic stop, including any statements, must be suppressed as fruit of the illegal stop, detention, and searches.

A.   Traffic stop

Defendant alleges there was no probable cause or reasonable suspicion supporting the traffic stop; that the stop was based on an uncorroborated anonymous tip that the minivan was being used to transport drugs, and no traffic violation occurred to justify the stop. (Filing No. 28, at CM/ECF pp. 2-3, ¶¶ b-d).

Trooper Avery acknowledged that he was aware of a report that a vehicle matching the minivan's description may be transporting drugs over Interstate 80. He watched the road to spot that vehicle. When he saw the minivan being driven by Defendant, he followed it until he saw traffic violations. He then initiated a traffic stop.

I need not discuss whether the anonymous tip was sufficiently corroborated to justify the stop. The traffic stop may have been motivated by the anonymous tip, but the constitutional reasonableness of the stop is not dependent on the subjective motivation of the officer involved. Whren v. United States, 517 U.S. 806, 813 (1996). If a traffic violation occurred, the officer's reason for focusing on a specific vehicle—even if that focus is based on an uncorroborated anonymous tip—is irrelevant. A traffic violation provides probable cause to stop the vehicle irrespective of whether the officer's actual motivation is to investigate for illegal drug activity. Id.; United States v. Fuehrer, 844 F.3d 767,

772 (8th Cir. 2016) (holding that if an officer has probable cause to initiate a vehicle stop for a traffic violation, the officer's alleged ulterior motivation to search for drugs was irrelevant).

If an officer observes a traffic violation, no matter how minor, there is probable cause to stop the vehicle. Fuehrer, 844 F.3d at 772 (citing United States v. Mendoza, 677 F.3d 822, 827 (8th Cir. 2012); United States v. Eldridge, 984 F.2d 943, 948 (8th Cir. 1993)). Here, the officer manually activated his in-car camera prior to the traffic stop. Upon review of that video, it is clear Defendant drove both on and over the right fog line after passing the semitruck. See i100 video at 2:00-3:20. "[A]ny crossing of the fog line, even momentarily and inadvertently crossing onto the shoulder, is enough to violate" the Nebraska rules of the road. State v. Magallanes, 284 Neb. 871, 876, 824 N.W.2d 696, 700 (2012) (interpreting Neb. Rev. Stat. § 60-6,142 ("No person shall drive on the shoulders of highways . . . . "); See also, State v. Ellwanger, No. A-17-1318, 2018 WL 5809844, at *3 (Neb. Ct. App. Nov. 6, 2018) ("Driving on the shoulder is also a law violation, even if the line is barely crossed."); State v. Jasa, 297 Neb. 822, 901 N.W.2d 315 (2017) (holding the officer's testimony that he observed the vehicle tires cross a lane line supported a finding of a municipal traffic violation, even though video recording of the incident was not entirely clear).

From the video, it also appears that after passing the truck, the minivan returned to the driving lane a short distance ahead of the truck—corroborating the officer's credible testimony that the Defendant cut in front of the truck at an insufficient and unsafe travelling distance.[2] Under Nebraska law, the driver of a

---

[2] Trooper Avery testified that Defendant's vehicle crossed the left fog line during the pass. I could not see that on the video recording, likely due to the angle of the recording and/or the glare on the recording from the headlights of oncoming traffic.

vehicle using the left lane to pass another vehicle proceeding in the same direction "shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Neb. Rev. Stat. § 60-6,133 (1). A violation of this statute provides probable cause to initiate a traffic stop. United States v. Humphrey, No. 8:02CR56, 2002 WL 1485387, at *1 (D. Neb. July 10, 2002) (quoting Neb. Rev. Stat. § 60–6,133(1)).

Defendant violated Nebraska traffic laws when he drove on and over the fog line and when, after passing the semitruck using the left lane, cut in front of it at an unsafe distance upon returning to the right lane. Trooper Avery had probable cause to initiate the traffic stop. The traffic stop did not violate the Fourth Amendment.

    2.    Prolonged detention

Defendant argues that his detention during the traffic stop was unduly prolonged in violation of his Fourth Amendment rights. (Filing No. 28, at CM/ECF p. 3, ¶¶ e & f). As the Eighth Circuit has recently summarized and explained:

> A traffic stop supported by probable cause or reasonable suspicion may nonetheless violate the Fourth Amendment if it lasts longer than necessary to effectuate its "mission—to address the traffic violation that warranted the stop and attend to related safety concerns." Rodriguez v. United States, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015) (internal citation omitted). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to the traffic stop,'" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. at 355, 135 S.Ct. 1609 (quoting Illinois v. Caballes, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)). When complications arise carrying out these tasks, "police may reasonably detain a driver for a longer duration than when a stop is strictly routine." United States v. Olivera-Mendez, 484 F.3d

505, 510 (8th Cir. 2007). But absent reasonable suspicion of separate criminal conduct, "an officer may not conduct unrelated checks that extend the stop beyond the time reasonably required to complete its original mission." [United States v. Soderman, 983 F.3d 369, 374 (8th Cir. 2020)].

United States v. Navarette, No. 20-1285, 2021 WL 1799596, at *3 (8th Cir. May 6, 2021).

A traffic stop can be lawfully extended if during the stop, the officer uncovers "specific and articulable facts which, taken together with rational inferences from those facts," amount to reasonable suspicion that further investigation is warranted. Id. (citing United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002). The court must consider the totality of the circumstances when deciding whether reasonable suspicion exists. Id. See also, United States v. Sanchez, 955 F.3d 669, 676–77 (8th Cir. 2020).

There was probable cause to stop Defendant's vehicle. Therefore, the traffic stop itself justified detaining Defendant for the reasonable time needed to check defendant's driver's license and criminal history, check the vehicle registration (with no registration documentation available at the stop), complete the warning ticket, and in this case, investigate and provide instruction regarding a traffic violation discovered during the traffic stop itself; that is, the failure to keep a four-year-old child in a car seat while travelling. The detention while Trooper Avery performed those tasks—24 minutes from when the traffic stop was initiated (see, i100 video at 3:23) until the warning ticket was handed to Defendant (see, i100 video at 27:20)—was not unreasonably prolonged. See Navarette, 2021 WL 1799596, at *3 (holding a traffic stop lasting 21 minutes was not unreasonably prolonged where the officer needed to investigate whether the defendant was a licensed driver).

9

Moreover, at the outset of the traffic stop in this case, Trooper Avery was immediately faced with a substantial inconsistency in Defendant's explanation of his travel; specifically, Defendant stated he was leaving Omaha, but he was stopped two hours west of Omaha while travelling eastbound toward Omaha. In addition, Defendant had a criminal history reflecting a drug-related crime. He could not provide insurance and registration information for the vehicle, claiming these documents were misplaced or lost during a recent auto detailing. But inconsistent with this excuse, the officer had noticed that the vehicle interior was dirty. Defendant stated he had attended a wedding in Omaha, but he could not state the location of the wedding he attended or identify who was present, and his wife merely stated the wedding was held somewhere in Nebraska. They were purportedly heading home from the wedding, but the stop occurred at 4:30 a.m. on a Monday morning—meaning no matter where the wedding was held in Nebraska, they began their trip late-Sunday or in the early morning hours of Monday. Defendant claimed he was looking for a gas station, but the officer saw him pass exits with gas stations prior to the stop. Defendant stated he had four children, but only one child was in the vehicle. When asked about the other three children, Defendant stated two children had flown home from the wedding. And when Trooper Avery then asked about the fourth child, Defendant added that the fourth child did not attend the wedding. All this information was obtained against the backdrop of an anonymous tip stating a vehicle matching this description was being used to transport illegal drugs.

With or without the anonymous tip, the implausible, confusing, evasive, and inconsistent responses of Defendant along with his wife's own evasive statement regarding the location of the wedding, all considered in the context of Trooper Avery's independent observations and investigation, supported a finding of reasonable suspicion to believe Defendant was engaged in ongoing criminal

activity. See, e.g., United States v. Murillo-Salgado, 854 F.3d 407, 416 (8th Cir. 2017). Trooper Avery did not violate Defendant's Fourth Amendment rights by detaining Defendant until the officer's suspicions were either confirmed or dispelled.

    3.    Vehicle search

By the time the warning ticket was handed to Defendant, (see, i100 video at 27:20), Trooper Avery had reasonable suspicion to continue the detention while he investigated whether a crime was being committed. He began by searching the vehicle. Defendant argues he did not consent to this vehicle search and even if he did, the search performed exceeded the scope of his consent. (Filing No. 28, at CM/ECF p. 3, ¶¶ g, h & i).

After Defendant received the warning ticket, Trooper Avery asked Defendant if there was anything illegal in the vehicle. Defendant initially denied having anything illegal, adding "You can check." (see, i200 video at 1:40-1:50). While Defendant's primary language is Spanish, he speaks fluent English and during the traffic stop, he responded appropriately, in English, to the officer's questions. At all times throughout the traffic stop, Defendant's conversation with Trooper Avery was friendly and nonthreatening. Defendant was not handcuffed or otherwise physically restrained during the traffic stop. Under such circumstances, a reasonable officer hearing the statement, "You can check," would believe Defendant was consenting to the search of his vehicle, including all portions of his vehicle where something illegal, including drugs, could be hidden.

But irrespective of whether Defendant's statement, "You can check," is considered consent to search, the search did not violate the Fourth Amendment.

11

Defendant admitted to having marijuana in the vehicle and then retrieved it for the officer. (see, i200 video at 2:00-2:20). The presence of marijuana in a vehicle, in and of itself, provides probable cause to perform a vehicle search. United States v. Smith, 789 F.3d 923, 929 (8th Cir. 2015); United States v. Caves, 890 F.2d 87 (8th Cir. 1989). Under the automobile exception to the warrant requirement, where an officer has probable cause to believe a vehicle contains illegal drugs, "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant." Carroll v. United States, 267 U.S. 132, 153 (1925). The permissible scope of this search extends to all parts of the vehicle and any containers within the vehicle where drugs could be found. United States v. Ross, 456 U.S. 798, 820 (1982).

Under the facts presented, Trooper Avery did not need a warrant or Defendant's consent to search the minivan. Due to the presence of marijuana in the vehicle, he was authorized to search the entire vehicle, including all components and containers within it, for the presence of illegal drugs. His search of the minivan, both at the roadside and later at the NDOR facility, did not violate the Fourth Amendment.

4.    Canine sniff

After the vehicle was transported to Grand Island, a canine sniff was performed. The canine, Mac, alerted and indicated to the odor of illegal drugs. Defendant argues the canine sniff was unreliable. (Filing No. 28, at CM/ECF p. 3, ¶¶ k & l).

The government presented substantial evidence explaining Mac's training, his behaviors, and his experience. Mac is trained and certified to perform canine sniffs for drugs, and he has a track record of being reliable in detecting the odor

of drugs. As such, there is no merit to Defendant's claim that the canine sniff must be suppressed because Mac is an unreliable drug dog. See United States v. Donnelly, 475 F.3d 946, 955 (8th Cir. 2007).

5. Fruit of the poisonous tree

Defendant argues that all evidence arising after initiating the traffic stop must be suppressed as fruit of alleged Fourth Amendment violations. (Filing No. 28, at CM/ECF pp. 3-4, ¶¶ j & m). That evidence would include any inculpatory statements Defendant made prior to his arrest.[3] Having concluded there were no Fourth Amendment violations, I also find the evidence arising from the traffic stop, Defendant's detention, the vehicle searches, and the canine sniff of the minivan should not be suppressed.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 28) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

---

[3] Defendant has not raised a Fifth Amendment claim to suppress his statements. And even had he done so, based on the evidence presented, he was not in custody during this traffic stop. Berkemer v. McCarty, 468 U.S. 420 (1984).

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **June 14, 2021**, or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

May 12, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge